The City of Mattoon, Petitioner, *v.* The Environmental Protection Agency *et al.*, Respondents.

(No. 11544;

Fourth District—May 9, 1973.

Joseph R. Spitz, of Mattoon, for petitioner.

William J. Scott, Attorney General, of Springfield, (Thomas J. Immel and Frederick C. Hopper, Assistant Attorneys General, of counsel,) for respondents.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The Petitioner-Appellant, City of Mattoon, seeks review of an order of the Illinois Pollution Control Board entered in response to a petition for variance filed by the City. The City's petition sought a variance from certain regulations promulgated by the Board known as SWB-14 and TR 20-22. The contents of regulation SWB-14 were furnished in a supplemental record. However, the contents of "TR 20-22" were neither made a part of the petition for variance nor were they set forth in the record in any fashion.

The City filed its petition for variance on January 23, 1971. The record reveals that regulation SWB-14 was enacted by the Illinois Sanitary Water Board, the predecessor of the Pollution Control Board, and set forth various standards for water quality and effluent discharge throughout the State. Municipalities were required to comply with SWB-14 by July, 1972, and to furnish plans and specifications for the implementation of SWB-14 with the Board by January 1970. Although the record is not clear on this point, TR 20-22 was apparently issued by the Board after the enactment of SWB-14 and established standards for the municipalities to meet that were more stringent than SWB-14.

The Environmental Protection Agency (EPA) responded to the City's variance petition by filing certain recommendations with the Board. Essentially, the position of the EPA was that the petition should be denied, the City penalized for failing to file various plans and that certain other orders be entered against the City.

A hearing on the City's petition was held on March 17, 1971, and evidence was presented by the City, the EPA and various citizens. The decision of the Pollution Control Board was announced on April 14, 1971. After summarizing portions of the evidence elicited at the variance hearing the Board severely criticized the City for failing to meet the requirements of SWB-14 regarding the submission of plans and specifications and entered the following order:

"1. The City of Mattoon is hereby ordered to submit to the Environmental Protection Agency, on or before September 1, 1971, final plans and specifications for the facilities required to bring its sewage collection and treatment facilities into compliance with Rules and Regulations SWB-14.

2. The City of Mattoon is hereby ordered to complete the construction of the facilities specified in paragraph 1 of this order no later than July 1, 1972.

3. The City of Mattoon shall post with the Environmental Protection Agency, on or before May 14, 1971, a bond or other security in a form to be determined by the Agency, in the amount of

$10,000.00, such sum to be forfeited to the State of Illinois in the event that the City does not comply with the provision of this order, as found by the Pollution Control Board in a supplementary proceeding.

4. The City of Mattoon shall, on or before July 15, 1971, issue without referendum such revenue bonds and/or general obligation bonds as may be necessary to finance the design and construction of facilities specified in paragraph 1 of this order.

5. The City of Mattoon shall complete the construction of the primary sedimentation tanks for reduction of bypasses by September 1, 1971.

6. The City of Mattoon shall not permit the connection of any new sewers or other sources of waste to its facilities, or any increase in the strength or concentration of wastes discharged to its facilities, until it demonstrates to the Agency that it is in full compliance with the requirements of SWB-14 with respect to overloads, bypasses, and the provision of advanced waste treatment.

7. The City of Mattoon shall pay to the State of Illinois, on or before May 14, 1971, a sum of $1000 as a penalty for violation of the water pollution regulations specifying dates for the submission of plans and the letting of contracts for construction of sewage treatment facilities."

The City has perfected this appeal from the above Order. During oral argument the parties advised the Court that the sewer ban specified in paragraph six had been lifted by the EPA. Accordingly, this portion of the Order is moot.

Paragraph seven of the Board's Order imposed a fine on the City for its failure to comply with Board regulations requiring the submission, by a specified date, of plans and specifications for the construction of facilities necessary to meet the requirements of SWB-14. Initially, we note that the fine was imposed in the context of a variance proceeding. This portion of the Order exceeded the Board's statutory authority and, therefore, must be reversed.

Title IX of the Environmental Control Act, sections 35 through 38 (Ill. Rev. Stat. 1971, ch. 111½, par. 1035-1038) deals with variances. Section 35 (Ill. Rev. Stat. 1971, ch. 111½, par. 1035) states that:

"The Board may grant individual variances beyond the limitations prescribed in this Act, whenever it is found, upon presentation of adequate proof, that compliance with any rule or regulation, requirement or order of the Board would impose an arbitrary or unreasonable hardship. In granting or denying a variance the

Board shall file and publish a written opinion stating the facts and reasons leading to its decision."

The Act goes on to provide that "in granting a variance the Board may impose such conditions as the policies of this Act may require." (Sec. 36(a); Ill. Rev. Stat. 1971, ch. 111½, par. 1036(a).) Finally, the Act states that if either the Board feels a hearing is advisable or if the EPA or any other person files a written objection to the grant of the variance then "a hearing shall be held, under the Rules prescribed in Sections 32 and 33(a)" of the Act "and the burden of proof shall be on the petitioner." Sec. 37; Ill. Rev. Stat. 1971, ch. 111½, par. 1037.

■■ It is obvious that Title IX of the Act deals only with variances and not with enforcement proceedings brought by the Board. Enforcement proceedings are governed by Title VIII, sections 30—34. (Ill. Rev. Stat. 1971, ch. 111½, pars. 1030—1034.) That Title allows the EPA to investigate alleged violations of the Act or any rule or regulation enacted thereunder and in the event a violation is either threatened or in existence the EPA is empowered to serve a formal written complaint upon the alleged violator. The burden of proof at an enforcement hearing is imposed upon the agency or other complainant. (Sec. 31(c); Ill. Rev. Stat. 1971, ch. 111½, par. 1031(c).) If the hearing discloses that a violation has taken place or is threatened then the Board can enter an appropriate order. The scope of the Board's order is delineated by section 33(b) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(b)), which states:

"Such order may include a direction to cease and desist from violations of the Act or of the Board's rules and regulations and/ or the imposition by the Board of money penalties in accord with Title XII of this Act. The Board may also revoke the permit as a penalty for violation. If such order includes a reasonable delay during which to correct a violation, the Board may require the posting of sufficient performance bond or other security to assure the correction of such violation within the time prescribed."

It is clear, therefore, that the legislature created an express distinction between a variance proceeding and an enforcement proceeding. The former is instituted by an entity affected by the rules and regulations of the Board while the latter is instituted by the EPA or a complainant to correct an actual or threatened violation of those rules. The Board has no authority to impose a fine on an alleged violator in the context of a variance proceeding.

This identical issue was recently passed upon in the case of *Citizens Utilities Co. v. Illinois Pollution Control Board,* 9 Ill.App.3d 158, 289 N.E.2d 642 (1972). There the court reviewed an order of the Board

granting a variance to the petitioner. However, the Board imposed certain conditions upon the variance grant and, in addition, assessed a fine of $1000 against the petitioner.

■■ On appeal, the court held that the Board could not impose a monetary penalty in a variance proceeding. The Board had contended that under Sec. 36(a) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1036(a)) it was granted authority to "impose such conditions as the policies" of the Act might require and that this language was broad enough to include the enforcement provisions of sections 33(a) and 33(b). This argument was specifically rejected in *Citizens* with the following language:

> "* * * we think that the legislative reference in section 37, which governs variances, to the procedure sections of the Act (Title VIII, sections 32, 33(a) *supra*), excluding any reference to enforcement orders and penalties, indicates a specific intent to exclude penalties as a part of the conditions of the grant of a variance. The fact that the Act provides enforcement proceedings to ascertain, penalize, and deter violators, further detracts from the Board's conclusion that such powers are necessarily included in variance proceedings. If the Board wanted to impose penalties against Citizens for violations of effluent standards or for the deterioration of the lagoon, the Agency should have filed a complaint and followed proper enforcement procedures, perhaps in a consolidated proceeding * * *.
>
> In light of section 37's non-reference to section 33(b) in variance proceedings, and the Board's ability to pursue enforcement procedures, the general language in sections 33(a) and 36(a) relied on by the Board should not be read to authorize the imposition of penalties in variance proceedings. If the legislature had intended to allow the imposition of penalties in variance proceedings, we believe it would have used language that plainly expressed such a purpose, as it did for enforcement proceedings. Statutory authority to impose penalties generally should not be created by construction, but only by clear and explicit enactment." (Citizens Utilities Co. v. Illinois Pollution Control Board, 9 Ill.App.3d 158, 165, 289 N.E.2d 642, 647-48 (1972).) (Citations omitted.)

■■ The same reasoning applies with equal force to the facts of the case before us. Here the City filed a variance petition seeking temporary relief from the application of specific Board regulations. The burden of proof was clearly on the City, not the EPA. No complaint was ever filed upon the City as required by section 31(a) (Ill. Rev. Stat. 1971, ch. 111½, par. 1031(a)), nor were the notice provisions of either section

31(a), *supra*, or section 33(c) (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c)) complied with. Yet the Board proceeded to fine the City $1000 for failing to file plans and specifications within the required time period. Paragraph seven of the order entered by the Board exceeded its statutory authority and therefore must be reversed.

Paragraph one of the Board's Order required the City to submit, by September 1, 1971, final plans and specifications for the facilities required to bring its collection and treatment facilities in compliance with SWB-14. The second paragraph of the order required the City to complete construction of the necessary facilities by July 1, 1972, and paragraph three called for the construction of primary sedimentation tanks by September 1, 1971. In its reply brief to this court the City suggested that these paragraphs were rendered moot by the new standards adopted by the Board after the entry of its order in this case. We concur. On March 7, 1972, the Board adopted Rule 404 which provides, in part, that municipalities such as the City of Mattoon have until December 31, 1973 to construct the facilities that are the subject of this appeal. Rule 404 also established September 1, 1972, as the date on which the necesssary plans and specifications for such facilities must be submitted to the Board. Therefore, paragraphs one, two and five of the Board's order are moot.

Since paragraphs one, two, four, five and six of the order involve issues which are moot, the appeal is dismissed as to those issues. That portion of the order contained in paragraphs three and seven thereof, requiring the posting of a bond and imposing a fine is reversed.

Appeal dismissed in part and judgment reversed in part.

CRAVEN, P. J., and SMITH, J., concur.